## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **YOLANDA YOUNG,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No.** |
| | ) | **1-09-cv-0464 RBW** |
| **v.** | ) | |
| | ) | |
| **COVINGTON & BURLING LLP,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

## DEFENDANT'S MOTION TO DISMISS COUNTS II AND VII UNDER FED. R. CIV. P. 12(b)(6)

Defendant Covington & Burling LLP moves the Court pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Counts II and VII of the Amended Complaint.

The grounds for the motion are Count VII fails to state a claim for negligent supervision on which relief can be granted because it is not predicated on a common-law breach of duty and that Count II is legally defective because (1) plaintiff failed to exhaust her administrative remedies by filing a complaint with the EEOC or the DC Office of Human Rights with respect to her disparate impact claims; (2)  plaintiff lacks standing to assert her disparate impact claims and (3)  plaintiff's disparate impact claims with respect to assignments are time barred.

The grounds for the motion are set forth in more detail in defendant's supporting memorandum.

Respectfully Submitted,

_____/s/_____
Michele A. Roberts, DC Bar No. 337-998
Donald R. Livingston, D.C. Bar No. 436-063
Michael C. Starr, DC Bar No. 461-773
AKIN GUMP STRAUSS HAUER & FELD
LLP
1333 New Hampshire Avenue, N.W.
Washington, DC  20036
(202) 887-4000 (Tel.)
(202) 887-4288 (Fax)

Counsel for Defendant Covington & Burling
LLP

September 14, 2009

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **YOLANDA YOUNG,** | ) | |
| | ) | **Civil Action No.** |
| **Plaintiff,** | ) | **1-09-cv-0464 RBW** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **COVINGTON & BURLING LLP,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS COUNTS II AND VII UNDER FED. R. CIV. P. 12(b)(6)

Defendant Covington & Burling LLP ("Covington") submits this memorandum in support of its motion to dismiss Counts II and VII of the amended complaint. These two counts assert new claims that did not appear in the initial complaint plaintiff filed in February. Both of these new claims are legally defective and should be dismissed as a matter of law.

## BACKGROUND

**Plaintiff's Factual Allegations.** Plaintiff was employed by Covington as a staff attorney from February 2005 until August 2007. (Am. Compl., ¶ 7.), Her work, like all Covington staff attorneys, consisted primarily of reviewing and coding documents in connection with e-discovery. (*Id.* ¶ 18.) In both the initial complaint (Dkt. No. 1) and the amended complaint (Dkt. No. 25), plaintiff claims that some of her co-workers created a racially hostile environment; that she complained about it to the lawyer in charge of the staff attorney program; that he took inadequate action in response; that she was not provided the same training as some white staff attorneys; and that she was subjected to increased scrutiny, an unfavorable evaluation

and a low bonus, and her employment was terminated, in retaliation for complaining about racial discrimination.  (Dkt. No. 1 at ¶ 11; Dkt. No. 25 at ¶¶ 33-113.)

Unlike her original complaint, the amended complaint also alleges that Covington "assigns its attorneys to the position of partner, counsel, associate or staff attorney based on [ ] criteria that results in a majority of its black attorneys being assigned to the position of staff attorney" and that these hiring criteria are "not related to or predictive of job performance."  (*Id.*, ¶¶ 13-15.)  The amended complaint also alleges, for the first time, that Covington "implemented a policy in Washington banning the promotion of all staff attorneys" and that this policy "disproportionately impacts blacks."  (*Id.*, ¶¶ 21, 29.)

**Plaintiff's Legal Claims.**  Plaintiff's initial complaint was filed in February 2009 against Covington and five individual defendants.  (Dkt. No. 1)  The complaint included three counts, two against Covington and one against the individual defendants.  The two counts against Covington were each based on three statutes, Section 1981 of the Civil Rights Act of 1866, Title VII of the Civil Rights Act of 1964 and the D.C. Human Rights Act ("DCHRA").  Count I accused Covington of intentionally discriminating against her on the basis of race.  Count II alleged that Covington engaged in unlawful discrimination in retaliation for her having complained about racial discrimination.

On August 21, 2009 plaintiff filed an amended complaint.  (Dkt. No. 25.)  The amended complaint omits the five individual defendants.  Unlike the initial complaint, however, which set forth the claims of intentional race discrimination and retaliation against Covington in two counts, the amended complaint asserts seven counts against Covington , six under Section 1981, Title VII and/or the DC Human Rights Act, and one common law claim for negligent supervision.

Two of the counts purport to assert new claims.  Count VII seeks to state a claim for negligent supervision based on the alleged failure of the manager of the staff attorney program to comply with the requirements of the antidiscrimination statutes.  Count II seeks to bring a new claim based on the theory of disparate *impact*.  (*Id.*, ¶¶ 124-29.)  Thus, Count II does not allege a violation of Section 1981, which provides a cause of action only for disparate *treatment*, i.e., intentional racial discrimination.  *See Gen. Bldg. Contractors Ass'n v. Pennsylvania,* 458 U.S. 375 (1982).

## ARGUMENT

## I.   COUNT VII FAILS TO STATE A COGNIZABLE CLAIM  FOR NEGLIGENT SUPERVISION.

Plaintiff's claim of negligent supervision rests on her allegations that defendant "owed Plaintiff a duty to ensure its managers complied with and enforced federal and local antidiscrimination law" and that the manager of the staff attorney program "failed to address Plaintiff's complaints of discrimination, failed to take appropriate steps to address the discriminatory conduct of the employee[s] he managed, and failed to protect Plaintiff from retaliation by his subordinates."  (Am. Compl., ¶¶ 153-54.)  As a result, plaintiff contends, defendant "breached its duty to Plaintiff by negligently, recklessly or indifferently supervising . . . [the] management of the staff attorneys and their work environment."  (*Id.,* ¶ 155.)  Plaintiff is wrong.  This precise claim has been rejected by the DC Court of Appeals and therefore fails as a matter of law.

The DC Court of Appeals has squarely held that, under DC law, a claim of negligent supervision "may be predicated only on *common law* causes of action or duties otherwise imposed by the *common law*."  *Griffin v. Acacia Life Ins. Co.,*  925 A.2d 564, 576 (D.C. 2007) (emphasis added).  "[A] negligent supervision action requires a breach by the

employer of a duty owed to the plaintiff, and . . . *this duty must be one imposed by the common law and not by statute*." *Griffin*, 925 A. 2d at 577 n.32 (emphasis added).

In *Griffin*, just as here, plaintiff alleged that her manager had subjected her to employment discrimination in violation of Title VII and the DCHRA and that the employer had failed to exercise reasonable care in its supervision of the manager. *Griffin*, 925 A. 2d at 574-75. And just as here, the underlying claim thus arose not under the common law but under statutes prohibiting employment discrimination. *Id.* at 577. The Court of Appeals "h[e]ld that a common law negligent supervision claim cannot be predicated on a violation" of anti-discrimination statutes. *Id.* at 579. Just as in *Griffi*n, because the amended complaint contains no allegation that defendant breached a common law duty to plaintiff, her negligent supervision claim should be dismissed.

## II.   PLAINTIFF'S DISPARATE IMPACT CLAIM IN COUNT II SHOULD BE DISMISSED.

Plaintiff's disparate impact claim fails for three independent reasons. First, she failed to include such a claim in the charge she filed with the EEOC and thus failed to exhaust her administrative remedies as required by law. Second, the complaint makes clear that she cannot prove she would have been "assigned" or promoted to the position of partner, counsel or associate at Covington but for any facially-neutral policies that she seeks to challenge. To the contrary, her complaint shows that she was neither engaged in, nor interested in pursuing, the practice of law during the ten years following her law school graduation (*see* Am. Compl., ¶ 32), and it does not allege that she had any other experience or achievements that would have made her a viable candidate for a position as a partner, counsel or associate at a major DC law firm, including Covington. Third, insofar as she makes a disparate impact claim with respect to her "assignment" to a staff attorney position at the time of her hire, her claim is time barred.

A.     **Exhaustion**

Under Title VII and the DCHRA, a plaintiff must timely exhaust her

administrative remedies before filing a lawsuit.  Such a lawsuit, moreover, "is limited in scope to

claims that are 'like or reasonably related to the allegations of the charge and growing out of

such allegations.'"  *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (citation omitted).

The "requirement of some specificity in a charge is not a "mere technicality" and a "court cannot

allow liberal interpretation of an administrative charge to permit a litigant to bypass the Title VII

administrative process."  *Id.* (citation and internal quotation marks omitted).  Thus, "[a]t a

minimum, the Title VII claim must arise from 'the administrative investigation that can

reasonably be expected to follow the charge of discrimination."  *Id.* (citation and internal

quotation marks omitted).

Here, plaintiff's EEOC charge contains no hint of a disparate impact allegation.[1]

Nor, tellingly, did the complaint she filed in court in February 2009 contain a disparate impact

claim. (*See* Dkt. No. 1.)  Indeed, the *only* allegation in plaintiff's EEOC charge relating to

assignments or promotions is that

> Staff Attorneys are comprised of a population of approximately
> 30% Blacks and 30% other minorities.  Due to this race
> composition, Staff Attorneys are subjected to . . . segregated,
> unfavorable work spaces, denial of maternity and jury leave, lack
> of promotional consideration and exclusion from retreats and
> office events.  Since my employment began, I was subjected to
> these disparate conditions.

(Ex. 1, p. 2)

---

[1]      Plaintiff's EEOC charge is attached hereto as Exhibit 1. Where, as here, an EEOC charge
is referenced in the complaint, the court may consider the charge on a motion to dismiss.  *See*,
*e.g.*, *Felder v. Johanns*, 595 F. Supp. 2d 46, 60-61 (D.D.C. 2009).

Plaintiff's EEOC charge goes on to allege specific facts regarding the alleged hostile work environment she experienced, alleged acts of retaliation, and her allegedly discriminatory termination.  But in sharp contrast she does not make *any specific factual allegations* relating to her promotion claim or her hiring/assignment claim.  And her charge does not identify and challenge *any facially non-discriminatory* policy regarding the assignment or promotion of attorneys.  Rather, while plaintiff refers to a "lack of promotional consideration" in her charge, she alleges only that this lack of promotional consideration is "*due to . . . race*."

Thus, plaintiff's *only* allegation relating to promotions plainly is for *intentional* discrimination, and the charge makes no allegation whatsoever regarding the *assignment* of attorneys to positions as partners, counsel and associates.  Moreover, her charge does not (1) refer, even obliquely, to any non-promotion or assignment  *policy* (or any other facially neutral policy), (2) use the phrase "disparate impact," "adverse impact," or any similar phrase, or (3) make any specific, factual allegations regarding promotions or assignments.  Accordingly, the disparate impact allegations that plaintiff now includes in Count II were neither referenced in the EEOC charge nor reasonably related to the allegations in the charge.

A number of Circuits have held that "a disparate-impact investigation could not reasonably have been expected to grow out of [a plaintiff's] administrative charge" where the charge: (1) "facially alleged disparate treatment"; (2) "identified no neutral employment policy"; and (3) "complained of past incidents of disparate treatment only."  *Pacheco v. Mineta*, 448 F.3d 783, 792 (5th Cir. 2006); *accord Noreuil v. Peabody Coal Co.*, 96 F.3d 254, 258-59 (7th Cir. 1996) (disparate impact claim barred on exhaustion grounds); *see also Brown v. Puget Sound Elec. Apprenticeship & Training Trust*, 732 F.2d 726, 730 (9th Cir. 1984) (holding that investigation of plaintiff's disparate impact claim would not have encompassed her disparate

treatment claim).  Many district courts across the nation have likewise dismissed disparate

impact claims on the ground that the underlying EEOC charge failed to allege any facially

neutral employment practice.[2]

      Significantly, courts that have rejected challenges to the sufficiency of a

plaintiff's EEOC charge often do so, in part, because "EEOC charges are rarely written by

lawyers."  *E.g.*, *Van Jelgerhuis v. Mercury Finance Co.*, 940 F. Supp. 1344, 1354 (S.D. Ind.

1996).  Here, of course, plaintiff *is* a lawyer – and her amended complaint seeks to bring a claim

that she is a good enough lawyer that Covington should have assigned her at the outset of her

employment or promoted her to partner.  Under these circumstances, she should not be entitled

to resort to relaxed pleading standards designed for the benefit of pro se plaintiffs.

---

[2]    *See*, *e.g.*, *Welch v. Eli Lilly & Co.*, No. 1:06-cv-0641, 2009 WL 734711, at *2 (S.D. Ind. Mar. 18, 2009) (holding that the "EEOC charge" must "identify or describe the neutral employment practice which is alleged to disproportionately affect protected employees"); *Zawacki v. Realogy Corp.*, 68 F. Supp. 2d 274, 281 (D. Conn. 2009) ("Plaintiff's disparate impact claims were not before the administrative agencies" because plaintiff's sworn statement failed "to allege that the Defendant implemented some neutral policy that had a disparate effect on older employees"); *Goethe v. California Dep't of Motor Vehicles*, no. 207cv-01945 2008 WL 489554, at *6 (E.D. Cal. Feb. 20, 2008) (holding that, because plaintiff's EEOC charge "alleged only that he suffered from instances of individual racial discrimination and that he was denied promotional opportunities," he had pled "no facts . . . that would have reasonably led to an investigation of a disparate impact claim"); *Remien v. EMC Corp.*, 2008 WL 821887, No. 04 C 3727, at *5 (N.D. Ill. March 26, 2008) ("Whatever language may be chosen to describe allegations of discrimination, it must at least be sufficient to capture, by way of description or specific identification of a particular practice, the disparate impact that befalls the class."); *Woodman v. WWOR-TV, Inc.*, 293 F. Supp. 2d 381, 390 (S.D.N.Y. 2003) (holding that administrative remedies were not exhausted where plaintiff's charge failed "to identify a specific, facially neutral employment practice"), *aff'd*, 411 F.3d 69 (2d Cir. 2005); *Lawton v. Sunoco, Inc.*, No. Civ. A 01-2784, 2002 WL 1585582, at *4-5 (E.D. Pa. July 17, 2002), *aff'd*, 65 Fed. Appx. 874 (3d Cir. 2003) (holding that plaintiff failed to state a disparate impact claim where his charge alleged only disparate treatment because it described no policy or practice which caused disparate impact); *Van Jelgerhuis v. Mercury Fin. Co.*, 940 F. Supp. 1344, 1354 (S.D. Ind. 1996) (finding charges did not preserve disparate impact claim where they made "no mention of employment practices with an allegedly skewed negative effect on women"); *cf.* *Youssef v. FBI*, 541 F. Supp. 2d 121, 138 (D.D.C. 2008) (noting denial of plaintiff's "requests to add [a] disparate impact discrimination claims because [he] failed to exhaust his administrative remedies for such claims").

In sum, Plaintiff's disparate impact claims in Count II of the amended complaint should be dismissed because she failed to include them in her EEOC charge, and she therefore failed to exhaust her administrative remedies.

**B.      Standing**

Plaintiff's disparate impact claims should also be dismissed for the alternative reason that the amended complaint fails to show that she was adversely affected by any neutral policies relating to the assignment or promotion of attorneys.  She therefore lacks standing to assert claims regarding these policies.

As a "basic requirement[] of standing," an individual plaintiff arguing a disparate impact must "show that the challenged policy directly disadvantaged him in some fashion." *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 577 (6th Cir. 2004); *accord Coe v. Yellow Freight Sys., Inc.*, 646 F.2d 444, 451 (10th Cir. 1981) ("Where the disparate impact doctrine has been used by the courts in individual actions rather than class actions, a plaintiff has been required to show that he personally has been the victim of discrimination by the general practice which allegedly resulted in a discriminatory impact on a protected group."); *Carpenter v. Board of Regents*, 728 F.2d 911, 915 (7th Cir. 1984) ("[A] plaintiff in a disparate impact case must show that he or she was really injured by the policy alleged to have had a disparate impact."); *see also Robinson v. Polaroid Corp.*, 732 F.2d 1010, 1016-17 (1st Cir. 1984).  In other words, "[u]nder a disparate impact analysis," an individual plaintiff must show that she "*personally has been victimized*" by the practice resulting in a discriminatory impact on a protected group." *Cox*

*v. Consolidated Rail Corp.*, Nos. 83-0514 and 85-0845, 1987 WL 109072 (D.D.C. August 26, 1987) (emphasis added).[3]

The amended complaint makes clear that plaintiff could not have been harmed by the facially neutral policy relating to assignments or promotions.  Plaintiff's complaint shows that, during the ten years since she graduated from law school, the practice of law has not been a career goal.  Rather, she has accepted assignments from legal placement firms as a contract lawyer "for *additional income*" beyond that which she earns in her writing career.

> Plaintiff is an African American.  She graduated from Howard University with a bachelor's degree in business administration (accounting) in 1991.  Plaintiff graduated from Georgetown Law Center in 1995.  After graduation, she published her first book, ON OUR WAY TO BEAUTIFUL, to Random House.  She has lectured at universities, including Vassar College and Louisiana State University, provided commentary for National Public Radio, and wrote frequently for the Washington Post, USA Today, and other periodicals.  She also founded the legal website, www.onbeingablacklawyer.com.  *For additional income, Plaintiff kept her resume on file with legal-placement agencies and often did contract legal work*.

(Amended complaint, ¶ 32) (emphasis added).

---

[3]     A disparate impact cause of action challenges a facially-neutral employment practice that functions to disproportionately affect a protected class.  *See Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971).  "To carry her prima facie case burden with respect to [a] disparate impact claim, [a] plaintiff must identify the specific employment practice that is challenged and amass 'statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applications for jobs or promotions because of' her membership in the protected class.  *Prince v. Rice*, 453 F. Supp. 2d 14, 27 (D.D.C. 2006)  (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988).  If a plaintiff makes out a prima facie case, defendant then "must rebut plaintiff's showing by presenting evidence tending to establish that the challenged employment practice is rooted in legitimate business judgment.  Assuming that defendant is able to do so, plaintiff 'must [then] show that other tests or selection devices, without similarly undesirable racial effect, would also serve the employer's legitimate interest in efficient and trustworthy workmanship.'"  *Id.* (citing and quoting *Watson*, 487 U.S. 998) (internal citation omitted).

In addition to admitting that she has no career interest in practicing law, and no experience doing so other than the contract lawyer assignments she obtained through a legal placement agency, plaintiff implicitly acknowledges that she has neither good grades, journal experience nor clerkship experience.  This acknowledgement is implicit in her allegation that Covington improperly takes account of these factors "to determine the assignment of its attorneys."  (Am. Compl., ¶ 15.)  Although plaintiff touts her attendance at a well-known law school, Georgetown, this is a characteristic that she shares with tens of thousands of other law graduates.  Nothing in the complaint, therefore provides even the slightest basis for supposing that any set of legitimate job-related criteria would have resulted in the selection or promotion of plaintiff for a position at Covington as a partner, counsel or associate.

In evaluating the sufficiency of a complaint, the courts need not accept as true "naked assertion[s]" devoid of "factual enhancement."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  Moreover, as the Supreme Court, recently held, to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is *plausible on its face*."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (emphasis added) (internal quotation marks and citation omitted).  "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 1950.  Plaintiff's claim that a facially neutral policy resulted in her not being hired as or promoted to partner, counsel or associate at Covington is simply not plausible.  As a matter of common sense, therefore, plaintiff will not be able to show that the challenged policy "directly disadvantaged" her.  *Bacon*, 370 F.3d at 577. Accordingly, Count II should be dismissed for this reason as well.

C.      <u>Statute of Limitations</u>

Even if plaintiff's claim that she should have been "assigned" to the position of associate or partner when she was hired were both plausible and properly exhausted, her disparate impact assignments claim is time-barred. Plaintiff was hired by Covington and "assigned" to the staff attorney position in February 2005.  (Am. Compl., ¶ 7.)  She did not file her EEOC charge until June 2008, nearly three years later.  (*Id.*, at ¶ 9.)  Under Title VII, she was required to file her charge within 300 days after the alleged unlawful employment practice occurred, 42 U.S.C. § 2000e-5(e); and she was required to do so within one year under the DCHRA.  D.C. Code § 2-1403.16.  Her claims relating to Covington's "assignment policy" are therefore time barred. *See Ashley v. Boyle's Famous Corned Beef Co*., 66 F.3d 164, 167 (8th Cir. 1995)

<u>CONCLUSION</u>

For the reasons stated, defendants requests that the Court dismiss Counts II and VII.

Respectfully Submitted,

        /s/
_____
Michele A. Roberts, DC Bar No. 337-998
Donald R. Livingston, D.C. Bar No. 436-063
Michael C. Starr, DC Bar No. 461-773
AKIN GUMP STRAUSS HAUER & FELD LLP
1333 New Hampshire Avenue, N.W.
Washington, DC  20036
(202) 887-4000 (Tel.)
(202) 887-4288 (Fax)

September 14, 2009              *Counsel for Defendant Covington & Burling LLP*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 14, 2009, I electronically transmitted the foregoing

Defendants' Motion to Dismiss Counts II and VII Under Fed. R. Civ. P. 12(b)(6), and

Memorandum in Support, to the Clerk's Office using the CM/ECF System for filing and transmittal

of a Notice of Electronic Filing to the following CM/ECF registrants:

Latif Doman, D.C. Bar No. 466654
DOMAN DAVIS LLP
118 Adams Street, NW
Washington, D.C. 20001
Phone: (202) 271-2533
Fax: (202) 741-8445
latif.doman@domandavis.com

*Counsel for Plaintiff Yolanda Young*

By:  _____/s/_____
        Michael C. Starr