# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

YOLANDA YOUNG,             )
                                 )
          Plaintiff,          )
                                 )
       v.                   )        Civil Action No. 09-0464 (RBW)
                                 )
COVINGTON & BURLING LLP,    )
                                 )
          Defendants.      )

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S
## SECOND MOTION TO DISMISS

Covington & Burling LLP has filed another motion to dismiss. It seeks the dismissal of Plaintiff's claims for the adverse impact on blacks of the law firm's job assignment and non-promotion policies applying to staff attorneys (Count II) and for negligent supervision of its staff-attorney manager (Count VII).

Plaintiff opposes the motion.

## I.     RELEVANT FACTS

1.     Covington employed Plaintiff as a staff attorney for two and half years. For most of her employment, she was recognized as a highly productive worker, receiving high bonuses and accolades for her performance. Then, on March 23, 2006, she reported to Patrick Davies, the staff-attorney manager, that white staff attorneys had received additional training, which made them more productive than blacks. She also told him that a group of white employees had used racial slurs that she found offensive.

2.     Davies did nothing about the favoritism. But, at a previously scheduled staff-attorney meeting, he denounced the use of racial slurs by using one of his own in a story he told. Black staff attorneys left the meeting feeling Davies did

not take Plaintiff's allegations of discrimination seriously. She certainly felt that way.

3.    Soon after that meeting, the staff-attorney management team began taking retaliatory actions against Plaintiff. She was reassigned to a workroom with one of the white staff attorneys she had accused of using racial slurs. This was just days after Davies had promised to keep Plaintiff's identity confidential; yet, most of the white staff attorneys had known and had begun to ostracize Plaintiff. Then, Davies falsely accused her of working from home. When she disproved that claim, he accused her of billing for what amounted to an extra hour of work. Throughout all of this, Davies, himself, had begun to ostracize Plaintiff by ignoring her emails and telephone calls. He, however, continued regular and extensive communication with some of the white staff attorneys who had used the racial slurs he claimed to denounce.

4.    When the first bonuses were awarded after Plaintiff had complained of discrimination, she found herself receiving the lowest bonus when on previous occasions she had received the highest. Another false accusation by Davies that Plaintiff had overbilled followed the insulting bonus. Then, the management team implemented an inexplicable evaluation process that they used to justify terminating Plaintiff for poor performance as part of a lay off.

5.    Plaintiff wrote an article critical of Covington that was published in the HUFFINGTON POST, a news blog. In that article, she made several observations about the firm's hiring and non-promotion practices applicable to staff attorneys, the racial demographics of its attorney workforce, and the resulting financial consequences for black attorneys who work at Covington:

Staff attorneys are non-partner track lawyers who handle the menial legal tasks--generating binders and attaching "relevant" or "not relevant" codes to thousands of emails, spreadsheets, and any other documents associated with a particular case-- that associates shun…. The base pay and bonus structure is half that of a 25 year old first year associate's.

Blacks at Covington comprise less than 5% of the Washington office's partners and associates, but make up 30% of its staff attorneys.
....

In a *Legal Times* essay, "The Unqualified Myth," Veta T. Richardson, Executive Director of the Minority Corporate Counsel Association wrote, "Law firms claim to have consistent hiring criteria, but their ranks are actually filled with exceptions to the rule. These exceptions are more likely to be white lawyers." Indeed, Covington's black staff attorneys (like its black partners and associates) hail from top law schools like Harvard, Duke and Georgetown while several white associates and partners attended schools like Catholic, Kentucky and Villanova (all ranked well below 50). Taken as a whole, the black staff attorneys' average law school rank is higher than that of white staff attorneys at the firm.
....

It's disheartening to then discover that the black student who borrows $120,000 to attend Georgetown will only earn half that of the white associate who's paid $60,000 to attend the University of Maryland.

Covington began stockpiling its staff attorney ghetto with blacks and other minorities in 2005, shortly after the General Counsel of some of the country's largest companies joined Roderick A. Palmore, Executive Vice President, General Counsel & Secretary of Sara Lee in taking a tougher stance on law firm diversity.
....

Covington has certainly diversified its firm; however, its attorneys are far from equals. The vast majority of Covington's black attorneys do no substantive work, have no control over their case assignments and no opportunity for advancement. This seems to be just the sort of structure the U.S. Equal Employment Opportunity Commission warned against in its 2003 "Diversity In Law Firms" report which stated, "In large, national law firms, the most pressing issues have probably shifted from hiring and initial access to problems concerning

the terms and conditions of employment, especially promotion
to partnership."

6.      Plaintiff re-applied to Covington when she learned that it had rehired

some of the laid-off staff-attorneys. The firm rejected her reapplication. The rehired

employees had not complained of discrimination. Plaintiff had.

7.      On June 5, 2008, Plaintiff filed a charge of discrimination against

Covington with the EEOC. The text of her charge states in part:

> Staff Attorneys are comprised of a population of approximately
> 30% Blacks and 30% other minorities. Due to this race
> composition, Staff Attorneys are subjected to **the following
> conditions that other positions, comprised of low
> minority populations, are not:** segregated, unfavorable work
> spaces, denial of maternity and jury leave, lack of promotional
> consideration and exclusion from retreats and office events.
> Since my employment began, I was subjected to these disparate
> conditions.

(The highlighted text reflects the language that Covington chose not to quote in its

motion to dismiss.)

8.      In its response to Plaintiff's EEOC charge, Covington volunteered that

its policy banning the promotion of staff attorneys was intentional:

> In 2005 Covington established a staff attorney program,
> creating a new category of lawyers at the firm. Staff attorneys
> are hired from a different applicant pool and follow a different
> job track than lawyers who are hired as associates.
>      ....
>
>      In the hiring process, the firm advised staff attorneys ...
> that they should *not* expect that they would ever be considered
> for positions as associates or for partnership.
>      ....
>
>      [Plaintiff] complains that staff attorneys are subjected
> to a "lack of promotional consideration." But this too is an
> element of the program design, not the product of racial
> discrimination.... The firm chooses not to hire staff attorney
> who seek to use the position as a stepping stone for
> advancement to a position as an associate, because that runs
> counter to the design of the program.

9.     Covington also stated that it was "justified in not re-hiring [Plaintiff] because of the misleading and disparaging comments she made on the blog posting."

10.    Plaintiff amended her complaint last month to include an adverse-impact claim regarding Covington's facially neutral policies that resulted in 30% of its staff attorneys being black and that prevents them from being promoted.

## II.    **STANDARD OF REVIEW**

In deciding a motion to dismiss, the Court must assume the truth of the complaint allegations and draw all reasonable inferences in the light most favorable to plaintiff. *See Swierkiewicz v. Sorema*, 534 U.S. 506, 508 (2002). The Supreme Court reconfirmed that a complaint "does not need detailed factual allegations" but, instead, need only meet the "threshold requirement" of Federal Rule of Civil Procedure 8(a) that the statement of the claim "show [ ] the pleader is entitled to relief." *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1964–66 (2007). Plaintiff's complaint surpasses Rule 8(a)'s requirement.

## III.    **ARGUMENT**

Covington challenges Counts II and VII as failing to state claims for relief for various reasons. Plaintiff addresses each reason in turn.

**A.    The Adverse-Impact Claim Should Not Be Dismissed Because the Allegations Appear on the Face of Plaintiff's EEOC Charge and Would Have Been Investigated by the EEOC.**

Covington makes three arguments for the dismissal of Plaintiff's adverse-impact claim. First, it claims that she did not raise it in her charge and, thus, failed to exhaust her administrative remedies. Second, it claims that she lacks standing to bring such a claim because she cannot show that she was promotable. And, third, it

claims the statute of limitations has run on one aspect of the adverse-impact claim concerning attorney job assignments. These arguments have no validity.

>1.    **The EEOC charge alleges facially neutral policies that have an adverse impact on black staff attorneys.**

With regard to the same argument Covington now makes against the sufficiency of her adverse-impact allegations, this Court has held that "an administrative charge is not a blueprint for the litigation to follow ... [and] the exact wording of the charge of discrimination need not presage with literary exactitude the judicial pleadings which may follow.... Rather, the critical question is whether the claims set forth in the civil complaint come within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Howard v. Gutierrez*, 571 F.Supp.2d 145 (D.D.C. 2008) (quoting *White v. New Hampshire Dep't of Corrs.*, 221 F.3d 254, 263 (1st Cir. 2000). In this case, both the language of the charge and the scope of the investigation encompass a claim of adverse impact.

Plaintiff's EEOC charge plainly alleges that the disproportionate racial makeup of the staff attorneys resulted in black staff attorneys not being promoted. Bound up in that allegation are two premises. The first premise is that Covington's job assignment of staff attorneys, when compared to other attorney positions at Covington, shows a disproportionate number of blacks being assigned to the staff-attorney position. The second premise is that Covington will not consider staff attorneys for promotion, which results in a disproportionate number of blacks ineligible for promotion at Covington.

To support this allegation, Plaintiff gave statistical evidence; drew a comparison between the racial demographics of Covington's staff attorneys and its

other attorney positions; identified the adverse policy; and asserted that she, like

other black staff attorneys, was adversely impacted by that policy:

> Staff Attorneys are comprised of a population of approximately 30% Blacks and 30% other minorities. Due to this race composition, Staff Attorneys are subjected to ***the following conditions that other positions, comprised of low minority populations, are not:*** segregated, unfavorable work spaces, denial of maternity and jury leave, lack of promotional consideration and exclusion from retreats and office events. Since my employment began, I was subjected to these disparate conditions.

In its moving papers, Covington deleted Plaintiff's assertion that one of the

"conditions" affecting the blacks who at that time made up 30% of the staff

attorneys—which she said did not affect other attorney positions because they were

"comprised of low minority populations"——was a "lack of promotional

consideration." The import of this statement is clear. Covington's policy ban on the

promotion of staff attorneys has an adverse impact on blacks since Covington

disproportionately assigns them to that job.

Covington reinterprets Plaintiff's statement as referring to her individual

disparate treatment only and not more broadly to the adverse impact of Covington's

policies on the protected class to which she belongs. But Covington's reinterpretation

is belied by Plaintiff's group-based statistical reference and her assertion that the

racial composition of the "Staff Attorneys" (and not her race in particular) made her

and other black staff attorneys disproportionately ineligible for promotion at

Covington.

Despite Covington's argument otherwise, Plaintiff was not required to incant

any magic words. The adverse-impact claim appears plainly on the face of Plaintiff's

charge of discrimination against Covington. She, therefore, has exhausted her

administrative remedies.

### 2. An EEOC investigation would have considered Covington's defense of not re-hiring Plaintiff because of the HUFFINGTON POST article.

In addition to appearing on the face of the charge, the EEOC investigation necessarily would have encompassed consideration of Plaintiff's adverse-impact claim. Covington, in its response to the charge, filed a 16-page letter in which it admitted using a different selection and assignment process for staff attorneys than it does for other attorneys at the firm. It also unambiguously stated that, by design of their program and policy, staff attorneys are not eligible to be promoted.

To determine the veracity of Covington's statements, the EEOC necessarily would have had to explore the manner in and criteria by which Covington selected and assigned staff attorneys. Since Covington does not dispute the disproportionate number of blacks working for it as staff attorneys, the EEOC also would have had to determine whether the promotion ban on staff attorneys had any adverse impact on the black staff attorneys.

Finally, the scope of the EEOC investigation would have encompassed Plaintiff's article in the HUFFINGTON POST because it is the basis for which Covington claims to have not rehired her. That article, which the EEOC would have read, articulates the adverse impact Covington's job-assignment and non-promotion policies have on blacks.

Plaintiff's charge, Covington's response to it, and the documents supporting both directly put in issue the very claim (Count II) that Covington now argues was not raised before the agency. Plaintiff exhausted her administrative remedies with regard to all aspects of her adverse-impact claim.

### 3. Plaintiff does not have to prove she is qualified for a job when she, by definition, is not qualified.

Covington's contention that Plaintiff cannot show that she was qualified for promotion to associate, of counsel, or partner is a red-herring. She has alleged that, under the staff-attorney promotion ban, a requirement for promotion to an associate, of counsel, or partner position is that the candidate not be a Covington staff attorney. Because she was a Covington staff attorney, she—by force of the policy ban—was not qualified for promotion to any of the other attorney positions. The policy ban disqualifies her and all other staff attorneys without any business necessity. That adversely impacts blacks who are disproportionately represented among staff attorneys.

The fact that Plaintiff is by definition not qualified for promotion, however, does not negate that she, nonetheless, is objectively qualified to perform the job of associate, of counsel, or partner in the absence of the policy ban. The Court of Appeals for the Ninth Circuit, in *Nicholson v. Hyannis Air Service Inc.*, __ F.3d __, 2009 WL 2857198 (9th Cir. Sept. 8, 2009), recently reversed summary judgment granted in favor of an employer because:

> [S]ubjective criteria should not be considered in determining whether a plaintiff is "qualified" for purposes of establishing a prima facie case under *McDonnell Douglas*. Instead, "the [qualifications] that are most appropriately considered at step one of [*McDonnell Douglas*] are those to which objective criteria can be applied."
>
> ....
>
> "Subjective criteria, along with any supporting evidence, are best treated at the later stages of the process. To do otherwise would in many instances collapse the three step analysis into a single initial step at which all issues would be resolved … defeat[ing] the purpose underlying the *McDonnell Douglas* process."

(quoting *Lynn v. Regents of Univ. of Cal.*, 656 F.2d 1337, 1344–45 n.8 (9th Cir. 1981).

This rationale was presaged by the Court of Appeals for the District of Columbia Circuit in *Anderson v. Zubieta*, 108 F.3d 329 (D.C. Cir. 1999):

> [I]n order to eliminate the most common nondiscriminatory explanation for a disparity-lack of qualifications-a plaintiff's prima facie case must take into account the "minimum objective qualifications" for the position at issue. But that does not mean a plaintiff must take account of every qualification recited by the employer, nor even of every "objective" qualification. Rather, what the case law means by "minimum objective qualifications" are those objective qualifications that can be shown to be truly required to do the job at issue.

The objective qualifications for an associate, of counsel, or partner position at Covington include graduation from a law school approved by the American Bar Association, passage of a bar exam in one of the United States, receipt of a license to practice law in the District of Columbia, and number of years of practice. Plaintiff maintained each of these credentials during her employment at Covington and, thus, was objectively qualified for any attorney position at Covington.[1] Thus, Covington's musings about whether Plaintiff was interested in practicing law or whether her grades were "good" or, more importantly, comparable to attorneys presently employed by Covington as associates, counsel, or partners are irrelevant.

All that matters at this stage of the litigation is whether Plaintiff was subject to the adverse policy. As a staff attorney, Plaintiff necessarily was subject to the promotion ban. She alleged that in her discrimination charge and her First Amended Complaint. She need allege no more to establish standing.

---

[1] It should be noted, however, that Covington hires first-year associates directly out of law school before they have passed a bar exam or received a license to practice law in the District of Columbia. Thus, the objective qualifications would be different had Plaintiff been considered for a first-year associate position.

      **3.**    **The adverse-impact claim regarding job assignments is timely because that policy applied throughout Plaintiff's employment and was reinforced with each staff-attorney evaluation.**

The Court of Appeals for the District of Columbia Circuit has ruled that a policy that has a continuing and ongoing application may be challenged at any time:

> The plaintiffs here … do not seek relief for the [employer's] initial announcement of its discriminatory policies, but rather for their continued application. [They] allege that the [employer's] policy currently "treats similarly situated employees differently." Accordingly, under *Lorance v. AT&T Technologies, Inc.,* 490 U.S. 900, 912 (1989), they may challenge those policies "at any time."

Covington presently uses the same selection/job-assignment policy for hiring attorneys as it did when it hired Plaintiff in 2005. Undoubtedly, Covington attorneys who were selected for non-staff-attorney positions at the time Plaintiff was assigned to a staff-attorney position are working at Covington today. In addition, the firm evaluated Plaintiff at least three times during her tenure. The last evaluation, which resulted in her termination, occurred within 300 days of her charge filing date. Each evaluation reinforced and recapitulated the adverse job-assignment criteria and policy that Covington used for initial job assignments. Consequently, Plaintiff's claim regarding the adverse impact of the manner in which Covington assigns attorneys is timely.

      **B.**    **The Negligent-Supervision Claim Should Not Be Dismissed Because It Is Premised on More than Conduct that Violates Antidiscrimination Statutes.**

Covington failed to protect Plaintiff from discrimination and retaliation in the workplace as it was required to do under applicable antidiscrimination law. It also

promised to maintain her confidentiality if she reported violations of the law.[2] That promise rests on an employer's common law duty to keep the workplace safe. If other employees who may be subject to discipline or termination as a result of reported discrimination learn of the reporter's identity, it could result in violence.

Patrick Davies, the staff-attorney manager, breached that duty. Covington failed to properly ensure he understood and carried out that duty because he unnecessarily shared Plaintiff's identity with the individuals she had accused of discriminating against her and other black staff attorneys. The result was that some of the white staff attorneys ostracized Plaintiff. But it could have been far worse if Davies had actually enforced the antidiscrimination law and terminated the participants in the racial slurs. Because an independent common law basis supports the negligent-supervision claim, it cannot be dismissed.

## IV.   CONCLUSION

For the foregoing reasons, the Court should deny the motion to dismiss.

Respectfully submitted,

Latif Doman (DC 466654)

**DOMAN DAVIS LLP**
118 Adams Street, N.W.
Washington, DC 20001
Phone/Fax: (888) 479-3330
latif.doman@domandavis.com

September 28, 2009

---

[2] Covington's equal opportunity policy asks that "[a]ny employee who believes that he or she has been the subject of sexual, racial or other unlawful discrimination, or the victim of sexual, racial or other unlawful harassment, should bring the matter to the attention of [a Covington authority].... Any such complaint will be investigated as promptly as reasonably possible. Confidentiality will be maintained to the extent practical and appropriate under the circumstances.

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on September 28, 2009, I served via ECF Plaintiff's Opposition to Defendant's Second Motion to Dismiss on lead counsel for Defendants, Michelle Roberts, at mroberts@akingump.com.

_____

Latif Doman (DC 466654)

**DOMAN DAVIS LLP**
118 Adams Street, N.W.
Washington, DC 20001
Phone/Fax: (888) 479-3330
latif.doman@domandavis.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| YOLANDA YOUNG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 09-0464 (RBW) |
| | ) | |
| COVINGTON & BURLING LLP, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>ORDER</u>

For the reasons given in Plaintiff's Opposition to Defendant's Second Motion to Dismiss and good cause shown, it is hereby this _____ day of October 2009

**ORDERED** that Defendant's Second Motion to Dismiss is DENIED.

So ordered.


_____
U.S. District Judge Walton