IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| YOLANDA YOUNG, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No. 09-0464 (RBW) |
| | ) |
| COVINGTON & BURLING LLP, | ) |
| | ) |
|       Defendant. | ) |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff, Yolanda Young, opposes Covington and Burling LLP's Motion for Partial Summary Judgment. Covington's arguments are not supported by the entire record, contradicted by Plaintiff's sworn testimony, and reliant on unproven assumptions. Genuine issues striking at the core of Plaintiff's disparate-impact claim remain in dispute. Covington, therefore, is not entitled to judgment as a matter of law, and its motion should be denied.

\* \* \*

**I.    STATEMENT OF FACTS**

1.    In February of 2005, Plaintiff applied for a staff attorney position with Covington. She and other applicants for staff-attorney positions to submit resumes, law school transcripts, proof of bar membership, and employment references. It also interviewed applicants for associate and staff-attorney positions. Young Affidavit, ¶ 1.

2.    The firm uses all the information it collects at the time of application to determine whether an applicant will be hired. And, if an applicant is hired, Covington keeps that material in the new hire's personnel file. Young Affidavit, ¶ 2.

3.      The partner who manages the staff-attorney program at Covington participates in the hiring of staff-attorneys and associates. That partner reviews the documentary material of all staff-attorney applicants and interviews those that pass a pre-selection cut. Likewise, the staff-attorney partner participates in the selection and interview of candidates for associate positions. Sometimes that partner makes hiring evaluations for both associates and staff-attorneys at the same time. Young Affidavit, ¶ 3.

4.      During her employment, Plaintiff was discriminated against. For most of her employment, she was recognized as a highly productive worker, receiving high bonuses and accolades for her performance. Then, on March 23, 2006, she reported to Patrick Davies, the staff-attorney manager, that white staff attorneys had received additional training, which made them more productive than blacks. She also told him that a group of white employees had used racial slurs that she found offensive. Young Affidavit, ¶ 4.

5.      Davies did nothing about the favoritism. But, at a previously scheduled staff-attorney meeting, he denounced the use of racial slurs by using one of his own in a story he told. Black staff attorneys left the meeting feeling Davies did not take Plaintiff's allegations of discrimination seriously. She certainly felt that way. Young Affidavit, ¶ 5.

6.      Soon after that meeting, the staff-attorney management team began taking retaliatory actions against Plaintiff. The team included and Brian Bieluch. She was reassigned to a workroom with one of the white staff attorneys she had accused of using racial slurs. This was just days after Davies had promised to keep Plaintiff's identity confidential; yet, most of the white staff attorneys had known and had begun to ostracize Plaintiff. Then, Davies falsely accused her of working from

home. When she disproved that claim, he accused her of billing for what amounted to an extra hour of work. Throughout all of this, Davies, himself, had begun to ostracize Plaintiff by ignoring her emails and telephone calls. He, however, continued regular and extensive communication with some of the white staff attorneys who had used the racial slurs he claimed to denounce. Young Affidavit, ¶ 6.

7.  When the first bonuses were awarded after Plaintiff had complained of discrimination, she found herself receiving the lowest bonus when on previous occasions she had received the highest. Another false accusation by Davies that Plaintiff had overbilled followed the insulting bonus. Then, the management team implemented an inexplicable evaluation process that they used to justify terminating Plaintiff for poor performance as part of a lay off. Young Affidavit, ¶ 7.

8.  Plaintiff expressed her desire to be promoted several times to management. Young Affidavit, ¶ 8.

9.  The only evaluation of staff attorneys Covington conducted in 2007 was in July. That served as the annual evaluation that year. Young Affidavit, ¶ 9.

II.  **ARGUMENT**

   A.  **Genuine Issues of Material Fact Exist Regarding Covington's Promotion Policy, Its Application to Plaintiff, and the Evaluations that Caused Plaintiff Not to be Promoted.**

Covington's summary-judgment motion is based on a straw man. It argues that Plaintiff was not affected by its discriminatory job-selection policy *at hire* because she did not apply for an associate position and only applied for a staff attorney position. In point of fact, she was affected by the policy at hire, but that is not what she is suing for. Rather, she challenges Covington's use of the job-

assignment policy to deny black staff attorneys promotion to associate. Covington goes on to argue that Plaintiff is time-barred from challenging her *hire* as a staff attorney. But, again, that is not her claim. She is concerned with the disparate impact on blacks of Covington's post-hire use of the job-assignment policy.

Genuine issues of material fact abound as to the claim Plaintiff actually lodged, not the one Covington wishes she had brought.

Covington had an unusually high concentration of blacks working as staff attorneys. Those attorneys typically went to better law schools and had better work experience than white staff attorneys. Many black staff attorneys were dissuaded from applying for an associate position because they were aware of the dearth of black associates at Covington and of the firm's near exclusive reliance on law school grades from a top ten school, law review membership, and clerkship experience.

Covington says its principal criteria for hiring staff attorneys are that they be members of the District of Columbia Bar and that they have experience with electronic document review. Virtually all of its applicants meet this minimal threshold. Consequently, the firm cannot use that information to determine which applicants will be hired versus those that will not. But it would like the Court to believe that it does.

In truth, it is the other information that Covington collects from all staff attorney applicants that is used to select who will be hired. It requires such applicants to submit law school transcripts and a resume recounting all law-related experience, including journal and clerkship experience, even though most of this information would be irrelevant to its minimal hiring threshold for staff attorneys. It also requires them to be interviewed. Covington keeps all this information on file if the applicant is hired.

4

When Covington has considered a staff attorney for promotion, that attorney's entire file was reviewed, including the information the firm suggests now was not relevant to hire as a staff attorney. This is where Plaintiff's challenge to the job-assignment policy begins.

Covington used that information—as well as job performance as a staff attorney—to decide whether to promote a staff attorney to associate. Covington promoted two white men from the rank of staff attorney. The discovery provided for one of the promotees, Joseph Kresse, is incomplete. Covington produced no information indicating why he was promoted or even how his promotion came about. Information from the other white male that was promoted, Eric Phelps, was more complete.

In his materials, the Covington partners who promoted him considered more than simply his job performance. One evaluator said, "[H]e looks good on paper." The "paper" being referred to clearly was not his performance evaluations. Rather, the reference was to his resume, the law school he graduated from, and his law school grades. Exhibit A.

Covington's use of such information in the past demonstrates its policy and practice regarding staff-attorney promotions. Covington's motion and supporting affidavits do not address the criteria it uses to determine whether a staff attorney will be promoted. Those documents only refer to Covington criteria for evaluating staff-attorney performance, which is different from assessing whether a promotion is appropriate. Performance evaluations may lead to consideration for promotion, but it is not the consideration.

If it is Covington's contention that all it considers for promotion of its staff attorneys is performance evaluations, then a genuine issue of material fact exists

5

because Mr. Phelps's personnel file clearly indicates that more than that was considered in his case and that his consideration for promotion occurred separate from his performance evaluation as a staff attorney. Defendants have presented no evidence that contradicts this conclusion.

Plaintiff testified that she expressed her desire to be promoted to associate on several occasions. Covington claims it never considered her for promotion because of evaluations made by two associates who Plaintiff has alleged discriminated against her. Questions of credibility are appropriate for the jury. Here, whether the two evaluators fairly evaluated Plaintiff and fairly failed to consider her for promotion are additional genuine issues of material fact in dispute.

### B.   Plaintiff's Claim Is Not Time-Barred.

Finally, Covington's argument that Plaintiff's disparate-impact claim is time-barred fails under *Lewis v. City of Chicago*, 560 U.S. __ (2010), which holds that the last use of a discriminatory policy, not adoption, is the relevant date for statute of limitations purposes.

Covington claims that it does not have a promotion ban for staff attorneys. Yet, it presented no evidence of when consideration of staff attorneys is made, whether during performance evaluations or some other time. It would like the Court to conclude that such consideration only occurs when a staff attorney is being evaluated for performance, but it has offered no evidence to support that.

That may be a logical time, but as Mr. Phelps's materials show, it is not the only time. One such evaluation occurred during Plaintiff's charging period. Covington claims it was not an annual evaluation. However, the record evidence shows that evaluation was the only one conducted for staff attorneys in 2007, so it was the annual evaluation for staff attorneys that year. Here, again, is a genuinely

6

disputed issue of material fact.  It also may be that consideration could have occurred at any other point in her 300-day charging period.  Covington presented no evidence that that could not happen, so the inference must go to Plaintiff.

### III.  CONCLUSION

For the foregoing reasons, the Court should deny the motion for partial summary judgment.

Respectfully submitted,

Latif Doman (DC 466654)

**DOMAN DAVIS LLP**
118 Adams Street, N.W.
Washington, DC 20001
Phone/Fax: (888) 479-3330
latif.doman@domandavis.com

## **CERTIFICATE OF SERVICE**

I certify that on July 30, 2010, I served via ECF Plaintiff's Opposition to Defendant's Motion for Partial Summary Judgment on lead counsel for Defendants, Michelle Roberts, at mroberts@akingump.com.

_____

Latif Doman (DC 466654)

**DOMAN DAVIS LLP**
118 Adams Street, N.W.
Washington, DC 20001
Phone/Fax: (888) 479-3330
latif.doman@domandavis.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| YOLANDA YONG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 09-0464 (RBW) |
| ) | |
| COVINGTON & BURLING LLP, ) | |
| ) | |
| Defendant. ) | |

## **ORDER**

For the reasons given in Plaintiff's Opposition to Defendant's Motion for Partial Summary Judgment and good cause shown, it is hereby this _____ day of _____ 2010

**ORDERED** that Defendant's Motion for Partial Summary Judgment is DENIED.

So ordered.

_____
U.S. District Judge Walton

9